PACIFIC EXPRESS COMPANY, Appellant, v. CARROLL COUNTY BANK, Respondent.

Kansas City Court of Appeals, April 10, 1896.

1. **Conversion**: INTENTION: PARTICIPATION. If a bank's cashier at the time of purchasing money orders from an express company's agent had knowledge of the agent's intention to convert and embezzle the proceeds, the bank would be liable to the company. But in this case the transaction discloses no such liability.

2. **Appellate Practice**: ADMISSION OF EVIDENCE: EXCEPTIONS. The appellate court can not review the admission of evidence by the trial court when no exceptions are saved.

3. ————: INSTRUCTIONS. The appellate court will not examine the instructions when no theory of law applicable to the facts will make the defendant liable.

*Appeal from the Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*Albert C. Davis* for appellant.

(1) The action of money had and received will lie wherever money has been paid to a defendant under circumstances which would make it inequitable and unjust for such defendant to retain the same. *Johnson-Brinkman Co. v. Bank*, 116 Mo. 558; *Tamm v. Kellogg*, 49 Mo. 118; 2 Greenleaf on Evidence, sec. 117; *Railroad v. McLiney*, 32 Mo. App. 166; *Jacoby v. O'Hearn*, 32 Mo. App. 566; *Koopman v. Cahoon*, 47

Mo. App. 357. (2) The court erred in admitting the letter signed "B" dated August 5, 1893. *Costigan v. Transportation Co.*, 38 Mo. App. 219. (3) The act of taking and collecting of the void money orders by respondent from appellant under the circumstances of their execution and delivery to respondent was a conversion of so much property of appellant's which it could waive and sue for money had and received. *Thatcher v. Pray*, 113 Mass. 291; *Thompson v. Barnum,* 49 Iowa, 392; *Williams v. Wall*, 60 Mo. 318. (4) Under all the evidence the verdict and judgment should have been for appellant. *Lyle v. Shinnebarger,* 17 Mo. App. 66; *Yeater v. Hines*, 24 Mo. App. 619; *Koontz v. Bank*, 51 Mo. 275; *Dobson v. Winner*, 26 Mo. App. 329; 1 Am. and Eng. Encyclopedia of Law, p. 427.

*Virgil Conkling* and *Jas. L. Minnis* for respondent.

(1) There was no evidence whatever tending to prove that respondent had knowledge that appellant's agent Carson had fraudulently issued the money orders, without consideration, if such was the fact. (2) The letter of appellant's treasurer, authorizing and directing Carson to continue to remit respondent's drafts, was under the circumstances complete authority to respondent to accept the money orders and issue its draft in payment therefor, and at the same time estops appellant from asserting the contrary. (3) The appellant received the same identical money that Carson procured by the money orders from respondent's cashier. Appellant, on account of the money orders described in the petition, paid to respondent $247, and respondent, for the said money orders, paid to appellant $247 and $5.50 on account of protest fees on draft. Appellant lost nothing and was in no way damaged or

injured by the transaction. (4) Appellant's retention of the money procured by the money orders, is a ratification of Carson's act in issuing them in any event. *Bank v. Lumber Co.*, 54 Mo. App. 323; s. c., 60 Mo. App. 255; *Fahy v. Grocery Co.*, 57 Mo. App. 73. (5) This court will not review the rulings of the trial court on the admission and exclusion of evidence because no exceptions were saved thereto. *Sawyer v. Drake*, 34 Mo. App. 72; *Dodd, Brown & Co. v. Wilson*, 26 Mo. App. 462; *Green v. Walker*, 99 Mo. 68.

SMITH, P. J.—The plaintiff is a public carrier and in 1893 kept a business office at DeWitt, in this state, which was in charge of one Carson, a local agent. Plaintiff, as a part of the business in which it was engaged, sold a species of exchange commonly known as "money orders," which recited upon its face "that this order can be deposited in bank and remitted by bankers, merchants, and others, who may cash it as exchange payable at New York and other principal cities of the United States."

The defendant, in the year above mentioned, was a banking corporation, doing a general banking business, also at DeWitt, of which said bank W. J. Cox was cashier.

On the twenty-fourth of July, 1893, plaintiff's agent Carson presented defendant's cashier five money orders, aggregating $247 issued by plaintiff, payable to the order of defendant's cashier, at St. Louis and New York, which said orders were purchased by defendant's cashier, and a draft in payment therefor was drawn by defendant's cashier, on a St. Louis bank, for the amount of said orders, payable to plaintiff, and which said draft was delivered to the plaintiff's agent, who remitted the same to plaintiff's treasurer at Omaha, Nebraska.

The draft was received by plaintiff's treasurer and not being paid when presented for payment, the same was protested and subsequently returned to plaintiff's agent, Carson, who presented it to the defendant's cashier and received the cash therefor, which he remitted to the plaintiff's treasurer. The money orders, in the due course of business, were presented to and paid by the plaintiff. The plaintiff, before the commencement of this suit, demanded of the defendant the payment of the said sum of $247, the amount of said money orders.

It is plain that the transaction between the plaintiff's agent and defendant's cashier, as we have just stated it to be, discloses no liability of the defendant to plaintiff. If the plaintiff's agent made sale of said money orders to defendant, with the intention of converting the proceeds thereof to his own use, or to embezzle the same, and the defendant's cashier, at the time of the transaction, had knowledge of such intention on the part of plaintiff's agent, then the defendant would, we think, be liable. It is true the draft given in exchange for the money orders was dated July 17, 1893, while the money orders were dated July 24, 1893. Why the former was made to antedate the latter does not appear. But assuming that this was done at the request of plaintiff's agent, still we can not think this fact, without more, is sufficient to justify the inference that the defendant's cashier knew that the plaintiff's agent intended to make a fraudulent use of the draft, if he did so.

Nor do we think the information imparted to defendant's cashier by plaintiff's agent, a couple of years previous to the transaction under consideration, when the latter was purchasing of the former another draft, tended to show any knowledge by the latter of the former's contemplated fraud on his principal.

There was no intimation in that conversation that plaintiff's agent was behind in his accounts, or was engaged in any scheme of fraud, or peculation. There is no evidence that plaintiff's agent was, at any time, a defaulter or that he did not account for all moneys coming into his hands, as the plaintiff's agent; or if so, there is a total absence of any knowledge thereof by defendant's cashier.

From the meager evidence presented by the plaintiff's abstract it seems that for two years, at least, before the sale of the money orders which gave rise to this suit, the usual and customary manner in which the plaintiff's agent made his remittances to the treasury of the company, was by draft, purchased with money orders. Indeed, it appears that the plaintiff's agent was expressly authorized by a letter from the plaintiff's treasurer to remit in that way. So that there was nothing unusual or strange in the circumstance of the purchasing the draft in the present case with money orders. The plaintiff's agent was authorized to sell money orders and the defendant's cashier had an unquestioned right to purchase the same and pay therefor in the drafts of the bank, and could not, on account of such transactions, be held liable for the conversion by the former of the draft to his own use. The vice in the plaintiff's contention lies in the assumption of facts which the evidence presented by his abstract does not tend to establish. If the facts were as plaintiff assumes them to be, we should perhaps find little fault with his conclusions of law.

There are no exceptions saved to any ruling of the court in admitting or rejecting evidence, so that we are obliged to pass without further notice the objections urged here by plaintiff to the action of the court in that behalf.

Nor will we examine the plaintiff's refused instruc-

tions, for the reason that upon no theory of law. applicable to the facts which the evidence conduces to prove could the court have found for the plaintiff.

The judgment, which was for defendant, is manifestly for the right party and must accordingly be affirmed. All concur.